No. 20,924.

WINFIELD S. BOWMAN, *Appellant*, v. H. M. CLYDE, *Appellee.*

### SYLLABUS BY THE COURT.

1. PROMISSORY NOTE—*Secured by Mortgage—Land Sold by Mortgagor Subject to the Mortgage—Suit on Note—Maker Entitled to Credit for Value of Land.* Where the mortgagor of land sells it subject to the mortgage, there being no assumption of the debt by the grantee, and a third person afterwards buys the mortgage and later obtains a deed to the land subject thereto, and then releases the mortgage, sells the land, and brings an action against the mortgagor upon his note, the plaintiff is entitled to recover the amount of the note less the reasonable value of the land at the time he sold it.

2. SAME. The plaintiff's rights in the situation are not affected by the fact that the defendant had told him he would see that the property sold for enough to pay the mortgage, if it were foreclosed.

3. SAME. The evidence held not to support a finding that the land was worth the full amount of the mortgage.

Appeal from Wyandotte district court, division No. 2; FRANK D. HUTCHINGS, judge. Opinion filed June 9, 1917. Reversed.

*C. A. Bowman*, of Kansas City, for the appellant.

*David F. Carson*, and *James T. Cochran*, both of Kansas City, for the appellee.

The opinion of the court was delivered by

MASON, J.: H. M. Clyde was the owner of a quarter section of land in Oklahoma, subject to a mortgage for $500. On

February 14, 1912, he executed a second mortgage thereon, securing a note for $550. A few days later he made a deed to the land, subject to the two mortgages. On October 23, 1913, Winfield S. Bowman bought the $550 note and mortgage. On October 5, 1914, he bought the land, subject to the two mortgages, for $10, having the deed made to his son, C. A. Bowman, his object being to prevent a merger. On December 10, 1914, he executed a quitclaim deed to his son, for the purpose, which was recited in the deed, of relieving the land from the $550 mortgage. He also paid off the first mortgage, but caused another for the same amount to be at once executed by his son. On March 3, 1915, he sold the land, subject to the $500 mortgage, which the buyer assumed, for $200, his son making the deed. On March 18, 1915, he sued Clyde upon his note for $550, giving credit, however, in his reply, for $200, the amount realized from the sale. A trial resulted in a verdict and judgment for the defendant, and the plaintiff appeals.

1. Although the various grantees had not assumed payment of the $550 mortgage, they had taken the land subject thereto, and the property was the primary fund for the satisfaction of the debt. (27 Cyc. 1342-3; 27 A. & E. Encycl. of L. 246.) That is, the mortgagor was entitled to have the land applied to the reduction of his personal liability. The plaintiff as the holder of the note and mortgage could not release the land from the lien and still look to the mortgagor for the full payment of the note. (27 Cyc. 1275; 2 Jones on Mortgages, § 1226; 1 Pingry on Mortgages, § 928.) Expressions are to be found in the authorities to the effect that by releasing the lien the holder of a mortgage completely loses his remedy on the personal obligation of the mortgagor. Where that rule has been applied it has been because the circumstances were such as to make it equitable. Ordinarily the rights of the mortgagor will be fully protected if he receives credit on the note for the value of the land at the time the lien is released. This was substantially the basis of adjustment adopted by the trial court. The release of the mortgage probably entitled the defendant to a credit upon the note equal to the value of the land at that time, but as the plaintiff until he sold the land could have recognized a right to redeem, doubtless the defendant could elect to regard the date of the sale as the time for

the determination of the value. The trial court treated the latter date as controlling. The defendant, having sold the land subject to the mortgage, was entitled, as between himself and any subsequent owner of the property, to insist that it should be applied to the reduction of his personal indebtedness, but as there was no assumption of the debt by any of the grantees this was the extent of his demands against them. (27 Cyc. 1343.)

2. There was testimony that after the plaintiff had acquired the title to the land he told the defendant that the first mortgagee was about to foreclose; that the defendant then asked him to let the foreclosure proceed and have it include his own mortgage, in which case the defendant would see that the property brought enough to cover both encumbrances. This had no tendency to establish a defense. The plaintiff had the privilege of paying off the first mortgage if he saw fit, and in failing to foreclose his own mortgage, having acquired the fee title, he committed an act somewhat analogous to the conversion of personal property by one holding it as security. We hold, as the trial court did, that his liability in this case is limited to the value of the land.

3. The verdict implied a finding that the land was worth $550 over and above the $500 mortgage. The plaintiff contends that there was no substantial evidence that it was worth more than $200 in excess of the lien. A number of witnesses called by the plaintiff testified to the value, placing it at from $500 to $700. The defendant produced no direct evidence on the subject. The jury were asked upon what they based their finding that the land was worth more than $700, and answered, "On W. S. Bowman's evidence." The plaintiff testified that he never saw the land; that he held it for five months, and sold it upon the first offer he received. This can hardly be regarded as evidence that it was worth more than he got for it, and is certainly not evidence that it was worth as much as $1050. The fact that he paid $10 for the land subject to the two mortgages, one for $500 and the other for $550, does not indicate that it was worth that amount. He was at the time the owner of one of the mortgages and might well have been willing to give a small sum for a deed, regardless of whether

the land was worth the amount for which it was encumbered. The verdict was therefore not warranted by the evidence upon which it was avowedly based. Various deeds to the land were introduced which recited large considerations, but these recitals were not competent evidence of the amount actually paid. (*Perkins v. Gregory*, 87 Kan. 303, 124 Pac. 168.) Evidence was given that one of the plaintiff's witnesses had stated that the land was worth $1900, but as this was admitted solely for the purpose of affecting his credibility it can not be considered as affirmative evidence of value. The fact that the first mortgage was for a loan of $500 made by an insurance company, is not substantial evidence that the property was worth over twice that amount. The defendant testified that in 1912 there were on the land a three-room house, a barn, a windmill, five acres of orchard, and fences; that the ground was leased and thirty acres were in cultivation; that a tenant paid $33.75 and spent $15 in repairs for the use of the pasture land six weeks. This likewise falls short of a basis for a finding that the property was worth $1050. Upon these grounds we conclude that the verdict was not sustained by the evidence.

No other error being found, the judgment is reversed, and the cause is remanded with direction to grant a new trial upon the issue of the value of the land, the rights of the parties to be adjusted in accordance with the finding.